# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

R4 PROPERTIES, MICHAEL A. RIFFICE, :
and ANN MARIE RIFFICE                :
     Plaintiffs                      :
                               :
v.                                   :     CIVIL ACTION NO.  3:09-cv-00400(DJS)
                               :
                               :
JOHN RIFFICE and KAREN RIFFICE       :
     Defendants                      :

## MEMORANDUM OF DECISION AND ORDER

       The plaintiffs, R4 Properties ("R4 "), Michael A. Riffice and Ann Marie Riffice, bring this action against the defendants, John Riffice and Karen Riffice, seeking to recover damages allegedly suffered as a result of the defendants' wrongful dissociation from R4, a joint venture created by the parties' Joint Venture and Joint Operating Agreement ("Agreement ") for the purpose of owning and managing properties in Florida.   The plaintiffs allege that the defendants dissociated from R4 with a negative partnership balance and are obligated to settle their account balances with the partnership by paying these deficiencies in accordance with the provisions of the Florida Revised Uniform Partnership Act, Fla. Stat. §§620.8701 and 620.8807(2).

       The Court has jurisdiction over this action based on the diversity of citizenship between the parties.  28 U.S.C. §1332.  The plaintiffs are residents of Connecticut and the defendants are residents of Illinois.  The amount in controversy exceeds $75,000.  In their Agreement, the parties agreed that Florida law governs any disputes.  They still maintain that Florida law governs the present action.

Now pending before the Court are the parties' cross-motions for summary judgment.  In the Plaintiffs' Motion for Summary Judgment, the plaintiffs contend that they are entitled to summary judgment on Count I of the Amended Complaint (Damages Pursuant to the Florida Disassociation Statute)[1] because: (1) Florida's Revised Uniform Partnership Act requires the defendants to make up any shortfall in the value of their share of R4; (2) the R4 properties and mortgages are properly included in any calculation of the dissociation damages; and (3) there was no accord and satisfaction of the partnership debts in question.  In the Defendants' Motion for Summary Judgment, the defendants argue that they are entitled to summary judgment on all counts of the Amended Complaint on the grounds that: (1) the Florida Revised Uniform Partnership Act does not allow the partnership to calculate the dissociating partner's interest by subtracting partnership liabilities or debts from the value of the partnership assets on the date of dissociation; (2) the plaintiffs have no admissible evidence of the value of the R4 properties on the date of dissociation; and (3) the defendants cannot be held liable for any partnership debts prior to the end of the term of the partnership.  For the reasons stated below, the Plaintiffs' Motion for Summary Judgment (Doc. #48) is **GRANTED IN PART AND DENIED IN PART** and the Defendants' Motion for Summary Judgment (Doc. #45) is **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

This action involves a real estate partnership between two brothers and their wives.  In

---

[1] Count II of the Amended Complaint claims Damages for Wrongful Disassociation and Count III (against John Riffice only) claims Damages for Breach of Duties to R4. *See* Doc. # 17, at 8. The plaintiffs have represented to the Court that they do not intend to pursue Count II or Count III if their motion is granted as to Count I. *See* Doc. # 50, at 1 n.1.

July of 2005, Michael Riffice and his wife, Ann Marie Riffice, formed R4 with Michael's brother, John Riffice, and his wife, Karen Riffice.  The partnership was formed to own and manage residential real estate properties in Celebration, Florida.  The parties' Agreement specified that the partnership would manage the properties and that the parties could agree to sell some or all of the properties. John, who lived in Florida, would manage the properties. The Agreement further specified that the partnership would continue until such time as the properties were sold or all parties agreed in writing to its termination.

Since R4 did not have adequate funds to purchase the properties that had been identified as investment opportunities, the parties agreed that Michael would borrow the money to acquire the properties on behalf of R4.  He purchased four properties in Celebration, Florida for the aggregate price of $1,214,000. Three of the properties were financed 100% by loans obtained by Michael.  The fourth property was 95% financed by Michael.  R4, through the capital contributions of the four partners, contributed $14,350 that was used to pay the remaining 5% balance on this property. The Agreement specified that the properties were to be "acquired in the names of Michael A. and Ann Marie Riffice and shall be held by them for and on behalf of R4 Properties as if R4 Properties held the properties in its own name." (Doc. # 1-2, at 2-3, ¶ 3).

From the formation of R4 until the fall of 2008 Karen Riffice kept the books and records of R4. At no time did any R4 party question the correctness of the books and records of R4 kept by Karen. She was also designated as the Tax Matters Partner for the 2006 and 2007 R4 tax returns and signed those returns on behalf of R4. In signing those tax returns under oath, Karen Riffice swore that the loans for the four properties were obligations of R4. Tax returns for 2006 and 2007 also show that John and Karen were each allocated 25% of the mortgage obligations on

3

the properties and the associated interest charges on those mortgages.

The four properties purchased on behalf of R4 posted losses in both 2006 and 2007. In July 2008 the defendants informed the plaintiffs that they could no longer afford to participate in R4.  On November 12, 2008, the defendants sent a letter to Michael Riffice  stating that October 27, 2008 was "the official date Karen and I dissociated from R4 Properties." (Doc. 47-4, at 2). The letter also included a check for $22,000 "which pays in full the balance of all capital calls[2] due up to October 27, 2008." (*Id.*).  The letter informed the plaintiffs that the defendants were no longer partners in R4 and that the plaintiffs should not expect any additional capital contributions from the defendants.

After the defendants' dissociation from R4, Michael Riffice had an operating statement and balance sheet prepared by his accountant.  The statements showed the amount of loss sustained and the amount in each partner's capital account as of the date of dissociation.  John and Karen Riffice's capital accounts amounted to a total negative balance of $218,490.10 ($109,245.05 each).[3]  Michael also obtained appraisals for the four properties as of the date of

---

[2]The parties' Agreement specified that, "Should the cash balance in The Company's account become less than [specified amounts], then each Party shall be required to contribute its prorate [sic] share of additional capital such that The Company will have a cash balance after such contribution equal to Thirty Thousand Dollars ($30,000)." (Doc. # 1-2, at 3-4, ¶ 5.2 b.). The defendant Karen Riffice agreed at her deposition that a negative cash flow from the time of R4's creation through October of 2008  "required . . . that there be cash calls made on the four partners" that were based on the books and records she kept. (Doc. # 52-1, at 11, pp. 30:24 - 31:12).

[3]The defendants contend that the plaintiffs failed to support this fact by admissible evidence as required by Fed. R. Civ. P. 56. As pointed out by the plaintiffs, however, these financial records simply reflect what was contained in the books and records of R4 that were prepared and kept by the defendant Karen Riffice and the defendants have not disputed the accuracy of those records.

dissociation.  The appraisals showed that the total purchase price of the four properties was $1,214,000 and the appraised value was $708,000 as of November 2008.

## II.  <u>DISCUSSION</u>

### A.  Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law" and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The movant bears the burden of showing that there is no genuine issue of material fact. *Id*. at 256.  The Court must draw all justifiable inferences and resolve all ambiguities in the nonmovant's favor. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  The nonmovant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The nonmovant "must come forward with specific facts showing that there is a *genuine issue for trial*."  *Id.* at 587 (internal quotation marks omitted).  Accordingly, Rule 56 "mandates the entry of summary judgment" against a nonmovant who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  On cross-motions for summary judgment, each motion must be considered independently and "on its own merits."  *Schwabenbauer v. Board of Education,* 667 F.2d 305, 314 (2d Cir. 1981).

B.  Damages Pursuant to Florida's Revised Uniform Partnership Act

It is undisputed that in July 2005 the parties formed a partnership, R4 Properties, which was governed under Florida law.  It is also undisputed that the defendants dissociated from R4 as of October 27, 2008, by their letter dated November 12, 2008. The Florida Revised Uniform Partnership Act ("FRUPA") governs the relations among partners and between partners and a partnership.  The parties dispute whether FRUPA requires the defendants to pay the negative balance on their partnership accounts as of the date of their dissociation from the partnership. Both parties maintain, however, that the basic facts are not in dispute and that the Court can determine at the summary judgment stage whether the defendants owe the partnership dissociation damages.

C.  Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on Count I, damages for dissociation under FRUPA, on the grounds that: (1) the R4 properties and related mortgages are the obligations of R4; (2) there was no valid accord and satisfaction of the outstanding partnership debts; and (3) the section of FRUPA dealing with the settlement of accounts and contributions among partners (Fla. Stat. §620.8807) applies to the defendants' dissociation from R4.  The Court will address each of these contentions below.

1. Obligations of R4

FRUPA provides statutory guidance on partnership property and the presumptions that apply in the event that the partners have failed to express their intent as to the ownership of the partnership property. In this regard FRUPA cites to a comment in the Revised Uniform Partnership Act approved by the National Conference of Commissioners on Uniform State Laws:

"Ultimately, it is the intention of the partners that controls whether property belongs to the partnership or to one or more of the partners in their individual capacities, at least among the partners themselves." Fla. Stat. Ann. §620.8204, cmt. 3 (West 2014).  Certain rebuttable presumptions apply if partners have failed to express their intent. *Id*.

First, FRUPA provides that, "Property is partnership property if acquired in the name of . . .  the partnership; or . . . [o]ne or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership but without an indication of the name of the partnership."   Fla. Stat. §620.8204(1).  In the instant case, the properties were acquired and the mortgages on the properties were taken out in the names of the  plaintiffs[4] and not in the name of the partnership.   There is nothing in the record to suggest that the instrument transferring title to the properties included an indication of the plaintiffs' capacities as partners of R4 or of the existence of R4.   Therefore, this presumption establishing partnership property is inapplicable.

Additionally, FRUPA provides the following presumption: "Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more partners with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership."  Fla. Stat. §620.8204(3).  Michael Riffice purchased the properties by using his credit to borrow money for the purchase price of the properties.  Three of the properties were financed and then refinanced

---

[4]There is some uncertainty in the record as to whether the properties were held in the name of Michael Riffice alone or Michael and Ann Marie Riffice. This distinction does not bear on the Court's consideration of the cross-motions for summary judgment. What is important for this purpose is that the properties were not acquired, and the mortgages on those properties were not taken out, in the name of either of the defendants John and Karen Riffice.

through mortgages obtained by him.  These properties were bought using only Michael Riffice's assets and not the assets of the partnership. The fourth property was 95% financed by Michael Riffice, based on his credit, and then refinanced with the balance of 5% being paid from capital advanced by the plaintiffs and defendants in their capacities as partners in R4.   Only the fourth property was purchased with a small amount of money from the individual partners.  Thus, the presumption arising out of the purchase of property with partnership assets does not apply.

A third presumption provides guidance on partnership property that is used for partnership purposes but acquired in the name of one or more partners: "Property acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes."  Fla. Stat. §620.8204(4).  On its face, this presumption applies because the properties were acquired in the plaintiffs' names without the use of partnership assets and there is no evidence that the instrument transferring title to the properties included an indication of the plaintiffs' capacities as partners of R4 or of the existence of R4.

The plaintiffs argue that the facts before the Court are sufficient to rebut the presumption arising under Fla. Stat. §620.8204(4) that the properties at issue were separate property even if used for partnership purposes. According to the plaintiffs, the intent of the parties controls and the parties clearly intended that the four purchased properties be R4 property and that the obligations as to those properties be obligations of R4. The defendants, on the other hand, contend that the plain language of  FRUPA compels the conclusion that the four properties were not R4 property but were instead the separate property of the plaintiffs.

8

The plaintiffs maintain that the partners manifested their intent as to the ownership of the properties in several ways.  They point to Sections 3 and 4 of the Agreement.  Section 3 states: "The properties described in Section 2.1 above shall be acquired in the names of Michael A. and Ann Marie Riffice and shall be held by them for and on behalf of R4 Properties as if R4 Properties held the properties in its own name."   (Doc. #1-2, at 2-3, ¶ 3).   Section 4 states: "The Parties hereby associate themselves in this joint operating agreement which shall have as its principal purpose: (i) The acquisition of properties to be owned and operated by R4 Properties, which shall be acquired and held as set out in Section 3 above."  (*Id.* at 3, ¶ 4). The plaintiffs further argue that the parties demonstrated their intent to treat the properties as properties of R4 by making mortgage amortization and interest payments on the four properties from R4 funds, by listing the mortgages on R4 tax returns as R4 liabilities, and by Michael refunding to the partnership some previously paid principal amounts returned to him when he refinanced the four properties in 2007.

The Court finds that even though the properties were not purchased with partnership assets or titled in the name of the partnership, they are partnership property because the parties intended that the four properties be the properties and obligations of R4.  The Court agrees with the plaintiffs that the intent of the parties was clearly manifested in their Agreement and that the intent of the parties is not in dispute in this case.  Furthermore, the defendants admitted in their respective depositions that the parties intended that R4 would be obligated for the mortgages and financing that were obtained on the properties by Michael Riffice.  (Doc. #52-1 at 17, pp. 21:15 - 23:1 and Doc. # 52-1 at 8-9, pp. 18:14 - 20:11).

In *Shephard v. Ouellete*, 854 So. 2d  251 (Fla. Dist. Ct. App. 2003), the Florida District

Court of Appeal considered whether a parcel of real estate in which a one-half interest had been transferred by one partner to another was partnership property. The two partners had agreed that upon conveyance, "the parties shall be partners in their ownership of the subject property and each shall timely pay one-half of all future expenses associated with ownership of the subject parcel." *Id.* at 253 (internal quotation marks omitted). The parties executed their agreement by means of a quit-claim deed, but the deed made no mention of the partnership. In determining that the real estate parcel was partnership property, the Florida court noted, among other things, that "[t]he parties clearly intended the property to be property owned by the partnership." *Id.* The parties before this Court likewise "clearly intended the property to be property owned by the partnership." *Id.* The intent of the partners to R4 controls and thus the properties, and the mortgages associated with those properties, are the obligations of R4 and not of the plaintiffs as individuals.

 2. Accord and Satisfaction

 The plaintiffs next argue that summary judgment should be granted as to Count I because there was no valid accord and satisfaction with respect to the check for $22,000 sent with the defendants' letter dated November 12, 2008. There are several elements of a valid accord and satisfaction as set out in Florida's Uniform Commercial Code. An accord and satisfaction by use of an instrument requires that "a person against whom a claim is asserted prove[] that that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument . . . ." Fla. Stat. §§673.3111(1). The Code further provides that in order for a claim to be discharged, "the person against whom the claim is asserted [must]

prove[] that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim."   Fla. Stat. §673.3111(2). The Official Comment to that statute states that, "This section deals with an informal method of dispute resolution carried out by use of a negotiable instrument. In the typical case there is a dispute concerning the amount that is owed on a claim." Fla. Stat. §673.3111, Official Comment 1.

The plaintiffs do not dispute that they received the November 12, 2008 letter and cashed the accompanying check for $22,000.  They do dispute, however, that this resulted in a valid accord and satisfaction.  The plaintiffs argue that "the debt being paid by John and Karen by the letter dated November 12 was not unliquidated and there was no dispute as to it."  (Doc. #50, at 16).  The plaintiffs claim that the check related to a capital call determined by Karen Riffice as a result of her keeping R4's books.  They state that "the payment only related to a prior, undisputed debt determined by Karen and not to any new debt created by the act of dissociation."  (*Id*. at 17).

The defendants do not directly address plaintiffs' claim that the amount the defendants paid with the November 12, 2008 letter was undisputed and not unliquidated.  Instead, the defendants argue that a reasonable trier of fact could find that the letter constituted a clear statement of full payment of all debts owed in connection with the partnership.  In their depositions, however, the  defendants acknowledged that there was no dispute as to the $22,000 check that they mailed to plaintiffs.  Karen admitted that $22,000 was the balance of all capital calls due to the partnership up to October 27, 2008, based on her accurate review of R4's books and records and that there was no dispute as to that amount.  (Doc. #52-1, at 12, p. 41:11-23). Similarly, John admitted that no one has challenged this amount and that he has no objection to

11

it.  He stated that it was his understanding that the $22,000 reflected their capital call obligations to the partnership as of the dissociation according to the books and records kept by Karen.  (Doc. #52-1, at 17-18, pp. 24:1 - 25:19).

In light of the defendants' admissions, the Court finds that the $22,000 paid by the defendants was not a debt that was in dispute. This was the accurate balance of capital call amounts that the defendants owed the partnership and both parties agreed that this exact amount was owed.  The Court concludes that the accord and satisfaction defense is not applicable because the defendants cannot prove that the debt they paid was unliquidated and subject to a bona fide dispute. The debt due of $22,000 was a specific liquidated amount and not in dispute.

3. Determining the Value of the Defendants' Partnership Interests Upon Dissociation

In their separate motions for summary judgment, both parties proffer different interpretations of FRUPA.  The plaintiffs argue that under the Act where there is a negative partner account balance, the dissociating partner must make the partnership whole for that amount.  They rely on Fla. Stat. §620.8701(1) which provides: "If a partner is dissociated from a partnership without resulting in a dissolution and winding up of the partnership business under §620.8801, the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price determined pursuant to subsection (2)."  That statute further provides that:

> The buyout price of a dissociated partner's interest is the amount that would have been distributable to the dissociating partner under §620.8807(2) if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value of the assets or the value of the assets based upon a sale of the entire business as a going concern without the dissociated partner and the partnership were wound up as of such date .

12

Fla. Stat. §620.8701 (2).  Based on these statutory provisions, the plaintiffs contend that Fla. Stat.

§ 620.8807 (2) governs  a determination of the amount owed to the partnership by the defendants

upon their dissociation. That statute provides that:

> In settling accounts among the partners, profits and losses that result from the liquidation of the partnership assets must be credited and charged to the partners' accounts.  The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account but excluding from the calculation charges attributable to an obligation for which the partner is not personally liable under §620.8306.  *A partner shall contribute to the partnership an amount equal to any excess of the charges over the credits in the partner's account.*

*Id.* (emphasis added).

According to the plaintiffs, FRUPA required a determination of the fair market value of

R4's assets as of the date of dissociation and further required the defendants to pay the negative

balance on their partnership accounts.

In their motion, the defendants argue that Fla. Stat. §620.8701 is the only provision that

applies to their dissociation.  They argue that §620.8701 does not mention partnership liabilities

or debts, but simply limits the buyout price to the liquidation value of the assets.  They claim that

this provision only requires the partnership to calculate the value of the partnership assets on the

date of the dissociation and pay the dissociating defendants their proportionate share of those

assets at the end of the partnership term.

The Court has found no authority on this precise issue of the interpretation of FRUPA.

The Wyoming Supreme Court, however,  has determined that in determining the buyout price of

a dissociated partner's interest under its version of the Revised Uniform Partnership Act,

"partnership assets must first be applied to discharge liabilities to creditors . . . ." *Warnick v.*

*Warnick*,  76 P.3d 316, 322 (Wyo. 2003). The Wyoming Supreme Court based its decision on

sections of its Revised Uniform Partnership Act that in all material respects are the same as the

corresponding sections of FRUPA. In *Warnick*, the court concluded that the plaintiff had

dissociated from the partnership on a particular date and that the partnership entity continued on

after that time. The court reasoned that the plaintiff's buyout price was "the amount that would

have been distributable to the dissociating partner under §17-21-808(b) if, on the date of the

dissociation, the partnership's assets had been sold.  However,  §808(a) provides that partnership

assets must first be applied to discharge partnership liabilities to creditors, including partners

who are creditors."   *Id.*.

The Wyoming statute governing the purchase of a dissociated partner's interest, Wyo.

Stat. §17-21-701, is virtually identical to the corresponding Florida statute, Fla. Stat. § 620.8701.

Neither statute explicitly mentions partnership liabilities or debts, but both provide that "[t]he

buyout price of a dissociated partner's interest is the amount that would have been distributable to

the dissociating partner under [the statute governing the settlement of accounts among partners

upon winding up the partnership business] if, on the date of dissociation, the assets of the

partnership were sold . . . ." Wyo. Stat. § 17-21-701 (b); Fla. Stat.§ 620.8701 (2).  The Wyoming

statute governing the settlement of accounts upon the winding up of the partnership provides as

follows: "In settling accounts among the partners, the profits and losses that result from the

liquidation of the partnership assets shall be credited and charged to the partners' accounts. . . . A

partner shall contribute to the partnership an amount equal to that partner's negative balance only

to the extent that negative balance is attributable to an obligation for which that partner is

personally liable . . . ." Wyo. Stat. § 17-21-808 (b). The corresponding Florida statute similarly

provides that, "In settling accounts among the partners, profits and losses that result from the

14

liquidation of the partnership assets must be credited and charged to the partners' accounts. . . . A partner shall contribute to the partnership an amount equal to any excess of the charges over the credits of the partner's account." Fla. Stat. 620.8807 (2).

In *Wassenaar v. Simons,* 16 F. App'x 274 (4th Cir.  2001), the court similarly concluded that in determining the value of an ousted partner's interest, the negative net value of that partner's interest needed to be taken into account. The plaintiff, who was the ousted partner, contended that the applicable statute did not address liabilities or debts, but "by its terms only speaks to amounts that an outgoing partner may receive." *Id.* at 278. The governing statute, Va. Code Ann. § 50-42, provided that an ousted partner "may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest . . . ." The court concluded that the plaintiff's argument would lead to an illogical result and rejected his interpretation of the statute: "We also agree that requiring [the plaintiff] to pay the negative net value of his partnership interest avoids the illogical result that would flow from [his] reading of § 50-42, whereby he, as an ousted partner, could collect his share of any positive value in the partnership, while at the same time standing immune from contribution for his share of the partnership's liabilities." *Wassenaar*, 16 F. App'x at 278 (internal quotation marks omitted).   Although the court in *Wassenaar* was not applying the Revised Uniform Partnership Act, its concern that the statutory interpretation urged by the plaintiff in that case would lead to an illogical result applies with equal force to the interpretation urged by the defendants in the instant action.

Based on the language of FRUPA and the reasoning expressed in the cases discussed above, the Court concludes that in determining the value of the defendants' partnership interests

15

as of the date of dissociation, "partnership assets must first be applied to discharge liabilities to creditors . . . ." *Warnick*, 76 P.3d at 322. Here, there is an excess of charges over the credits in the defendants' accounts. Consequently, the defendants owe the partnership the negative value of their partnership accounts.

### D.  Defendants' Motion for Summary Judgment

The defendants moved for summary judgment on all counts.  They argue that: (1) FRUPA does not allow a partnership to take into account a dissociating partner's liabilities when calculating his buyout price; (2) the plaintiffs have not submitted admissible valuation evidence for the properties; and (3) if the defendants are liable to R4 they are not required to pay their negative buyout price until the end of the term of the partnership agreement.  Because the Court has already addressed the first argument in the context of the plaintiffs' motion, it will proceed to the remaining issues in the defendants' summary judgment motion.

The defendants contend that the plaintiffs cannot meet their burden to show the value of the properties because they have not submitted any admissible valuation evidence.  The defendants argue that a property appraisal constitutes expert testimony and that the plaintiffs' valuation evidence fails to comply with Fed. R. Civ. P. 26(a)(2)(A) which requires parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A) .  They maintain that the plaintiffs failed to disclose an expert by the close of discovery and that summary judgment should be granted in their favor because the plaintiffs have failed to prove the value of the negative buyout price that the defendants allegedly owe.

In response, the plaintiffs first argue that property appraisals that were attached to their

16

original Complaint meet the requirements of Fed. R. Civ. P. 26.  They claim that the reports

include the identity of the expert, the opinion expressed, the facts upon which the expert's

opinion is based, and a copy of the written report.  The plaintiffs also maintain, however, that

expert testimony is not needed to prove the valuation of the properties.  In the alternative, the

plaintiffs argue that if the Court finds that the appraisals should have been specifically designated

as expert witness material, their failure to do so is harmless error that should not preclude their

admission as expert reports.

First, the Court must determine whether the plaintiffs failed to comply with  Fed. R. Civ.

P. 26.  If there is a violation, the Court must determine the appropriate sanction under Fed. R.

Civ. P. 37(c) which governs sanctions for violating discovery rules and failing to make expert

disclosures.  Under Fed. R. Civ. P. 26(a)(2)(B), expert reports must include the following

information: a statement of all opinions the witness will be expressing and the reasons for them,

the facts or information considered by the witness in forming the opinions, any exhibits that will

be used to summarize the opinions, the witness's qualifications, a list of all other cases that the

witness has testified in as an expert in the past four years, and a statement of the compensation to

be paid for the study and testimony in the case.  Fed. R. Civ. P. 26(a)(2)(B)(i—vi).  The plaintiffs

submitted appraisals with the Complaint, but they did not include the witness's qualifications, a

list of other cases that the witness has testified in as an expert, or a statement of compensation

that the witness will receive for study and testimony in the case.  Therefore, the Court finds that

the plaintiffs' appraisals do not fully comply with Fed. R. Civ. P. 26(a)(2)(B).

Under Fed. R. Civ. P. 37(c)  a court may exclude an expert's testimony where a party has

failed to comply with  Fed. R. Civ. P. 26(a)(2), unless the failure to comply is substantially

justified or harmless. As to this issue, the Court agrees with the plaintiffs that their failure to properly designate the appraisals as "expert reports" and include additional information as to the expert's qualifications, experience and fees is harmless error.  The defendants were aware of the existence of the appraisals and the name of the appraiser from the date the Complaint was filed. The appraisals were attached as an exhibit to the original complaint and were in fact filed as exhibits to the defendants' motion for summary judgment. The defendants had sufficient notice and information to pursue discovery on valuation issues, but they did not do so.  Nevertheless, the Court will require the plaintiffs to supplement the appraisals with additional information in order to comply with  Fed. R. Civ. P. 26(a)(2).  The Court will also allow the defendants the opportunity to depose the plaintiffs' appraiser, if they choose to do so, and to disclose their own valuation expert.

The defendants next argue that if the Court finds that they are liable for the balance on their partnership accounts, they are not required to pay the plaintiffs that balance until the end of the term of the partnership agreement.  The parties' agreement states that, "This Agreement may be terminated . . . [u]pon the mutual written agreement of all Parties [or] [u]pon the sale of all properties held by the Joint Venture." (Doc. # 1-2, at 7, ¶ 7.2). The defendants "do not dispute that they dissociated without the plaintiffs' 'mutual agreement' and before the Properties were sold."  (Doc. #46, at 12).  However, they claim that the plaintiffs' action is premature because FRUPA provides that:

> A partner who wrongfully dissociates before the expiration of a definite term or the completion of a particular undertaking is not entitled to payment of any portion of the buyout price until the expiration of the term or completion of the undertaking, unless the partner establishes to the satisfaction of the court that earlier payment will not cause undue hardship to the business of the partnership.

Fla. Stat. §620.8701(8). The defendants argue that this section "expressly prohibits a wrongfully dissociated partner from collecting his or her buyout price until the expiration of the partnership term." (Doc. #46 at 12). They claim that they are owed a negative buyout price and, pursuant to FRUPA, are prohibited from "collecting" that negative buyout price, which in their case requires payment by them to the partnership, until the end of the term of the partnership.

In contrast, the plaintiffs argue that the delay in payment only applies to the wrongfully dissociating partner's receipt of his or her positive partnership account balance and does not defer or delay any payments due from the wrongfully dissociating partner to the remaining partners or the partnership. The Court agrees that Fla. Stat. §620.8701(8) addresses only a payment by the partnership to the wrongfully dissociating partner. The Uniform Comments to this section provide that:

> [A] wrongfully dissociating partner is not entitled to receive any portion of the buyout price before the expiration of the term or completion of the undertaking, unless the dissociated partner establishes to the satisfaction of the court that earlier payment will not cause undue hardship to the business of the partnership. In all other cases, there must be an immediate payment in cash.

Fla. Stat. §620.8701(8), cmt. 9. It is clear from the plain language of the statute and the accompanying comments that this section was intended to benefit partnerships by allowing them to delay payment of a positive partnership account balance to a wrongfully dissociating partner if that payment would financially burden the partnership. There is no support in the language of the statute, or in its purpose, for the defendants' theory that because R4 owes them a negative buyout price, their payment to R4 should be delayed until the end of the term of the partnership. In any case, it has been established to the satisfaction of the Court "that earlier payment [of the negative buyout price] will not cause undue hardship to the business of the partnership." Fla. Stat.

19

§620.8701(8).

### III.  CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for Summary Judgment (Doc. #48) is

**GRANTED IN PART AND DENIED IN PART**. This case will proceed only as to a

determination of the amount of the defendants' negative account balances owed to the

partnership. To that end, the plaintiffs shall, by October 15, 2014, supplement the appraisals they

previously filed with additional information in order to comply with  Fed. R. Civ. P. 26(a)(2).

The defendants may thereafter depose the plaintiffs' valuation expert and disclose their own

valuation expert. Any such deposition of the plaintiffs' expert shall take place on or before

November 17, 2014. The defendants shall disclose their valuation expert in compliance with Fed.

R. Civ. P. 26 on or before December 19, 2014. The plaintiffs may thereafter depose the

defendants' valuation expert on or before January 20, 2015.

The defendants' Motion for Summary Judgment (Doc. #45) is **GRANTED IN PART**

**AND DENIED IN PART**. The motion is denied as to Count I of the Amended Complaint and

granted as to the remaining counts, which the plaintiffs have indicated they do not intend to

pursue.

Dated at Hartford, Connecticut this     23rd       day of September, 2014.

_____/s/ DJS_____
                      Dominic J. Squatrito
                      United States District Judge

20